**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CITY OF CHICAGO, an Illinois municipal corporation,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**GLOCK, INC.,**<br><br>    **Defendant.** | **Case No. 1:24-cv-03088**<br><br>**Hon. Steven C. Seeger** |

<u>**DEFENDANT GLOCK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**ITS MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**</u>

Holly A. Harrison
Michael L. Rice
**HARRISON LAW LLC**
141 West Jackson Blvd., Suite 2055
Chicago, IL 60604
Telephone: 312-638-8781
Email: hollyharrison@hlawllc.com
        mikerice@hlawllc.com

John F. Renzulli
Christopher Renzulli
Scott C. Allan
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, New York 10601
Telephone: (914) 285-0700
Email:  jrenzulli@renzullilaw.com
        crenzulli@renzullilaw.com
        sallan@renzullilaw.com

Attorneys for Glock, Inc.

Dated: June 10, 2024

## **TABLE OF CONTENTS**

BACKGROUND...........................................................................................3

ARGUMENT...............................................................................................5

    I.    LEGAL STANDARD....................................................................5

    II.    THE CITY'S COMPLAINT MUST BE DISMISSED
          PURSUANT TO THE PROTECTION OF LAWFUL
          COMMERCE IN ARMS ACT..........................................................6

          A.    The Protection of Lawful Commerce in Arms Act Was
                  Passed to Provide Immunity to Firearm Manufacturers
                  From Lawsuits Seeking to Hold Them Liable for the
                  Criminal Misuse of Their Lawful Products..................................6

                1.    This Case is a Qualified Civil liability Action.................7

                2.    Glock, Inc. is a Manufacturer.........................................8

                 3.    Glock Pistols are Qualified Products................................9

                4.    The City is Seeking Damages and Other Relief
                       Resulting from the Criminal Use of Qualified
                       Products by Third Parties..............................................9

          B.    The City's Complaint Does Not Meet the Requirements for
                  the Predicate Exception..............................................................10

          C.    If the ICFA Qualifies Under the Predicate Exception,
                  it is Unconstitutional..................................................................17

                  1.    The ICFA Violates the Commerce Clause.....................17

                  2.    The ICFA is Void for Vagueness.................................19

                  3.    The ICFA Violates the Second Amendment..................21

    III.    THE CITY'S CLAIMS FAIL TO STATE A CLAIM UPON WHICH
           RELIEF CAN BE GRANTED PURSUANT TO ILLINOIS LAW.....................22

CONCLUSION...........................................................................................26

i

## TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)........................................................................................6

*Atkinson v. Garland,*
 70 F.4th 1018 (7th Cir. 2023)........................................................................21

*Bell Atlantic Corp v. Twombley,*
 550 U.S. 544 (2007)........................................................................................5

*Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp.,*
 273 F.3d 536 (3rd Cir. 2001)........................................................................22

*City of Chicago v. Beretta U.S.A. Corp.,*
 821 N.E.2d 1099 (Ill. 2004)........................................................3, 17, 23-25

*City of New York v. Beretta U.S.A. Corp.,*
 524 F.3d 384 (2d Cir. 2008)....................................................................12-13

*Cocroft v. HSBC Bank USA, N.A.,*
 796 F.3d 680 (7th Cir. 2015)........................................................................25

*Comptroller of Treasury of Md. v. Wynne,*
 575 U.S. 542 (2015)......................................................................................18

*Connally v. Gen. Constr. Co.,*
 269 U.S. 385 (1926)......................................................................................19

*Connick v. Suzuki Motor Co.,*
 675 N.E.2d 584 (Ill. 1996)............................................................................25

*Conopco, Inc. v. Roll Int'l,*
 231 F.3d 82 (2d Cir. 2000)..............................................................................6

*Daniels Sharpsmart, Inc. v. Smith,*
 889 F.3d 608 (9th Cir. 2018)........................................................................18

*Delana v. CED Sales, Inc.,*
 486 S.W.3d 316 (Mo. 2016)..........................................................................10

*District of Columbia v. Heller,*
 554 U.S. 570 (2008)......................................................................................21

*Estate of Kim ex rel. Alexander v. Coxe*,
 295 P.3d 380 (Alaska 2013)..................................................................................10-11

*First Springfield Bank & Trust v. Galman*,
 720 N.E.2d 1068 (1999)..........................................................................................24

*Grayned v. City of Rockford*,
 408 U.S. 104 (1972)................................................................................................19

*Harrison v. Hardin County Comm. Unit School Dist. No. 1*,
 758 N.E.2d 848 (Ill. 2001)......................................................................................24

*Howe v. Shchekin*,
 238 F. Supp. 3d 1046 (N.D. Ill. 2017).....................................................................6

In *Ileto v. Glock, Inc.*,
 565 F.3d 1126 (9th Cir. 2009)...........................................................................10, 12

*In re Academy, Ltd.*,
 625 S.W.3d 19 (Tex. 2021).......................................................................................6

*Johnson v. United States*,
 576 U.S. 591 (2015)................................................................................................20

*Legato Vapors, LLC v. Cook*,
 847 F.3d 825 (7th Cir. 2017)...................................................................................18

*Linton v. Smith & Wesson*,
 469 N.E.2d 339 (Ill. App. 1984).............................................................................23

*Martin v. Harrington & Richardson, Inc.*,
 743 F.2d 1200 (7th Cir.1984)..................................................................................25

*Mighty v. Safeguard Properties Mgmt., LLC*,
 No. 16 C 10815, 2018 WL 5619451 (N.D. Ill. Oct. 30, 2018)...............................25

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
 142 S. Ct. 2111 (2022)............................................................................................21

*Nat'l Pork Producers Council v. Ross*,
 598 U.S. 356 (2023)................................................................................................17

*NSSF v. Attorney General of New Jersey*,
 80 F.4th 215 (3d Cir. 2023).....................................................................................16

*NSSF v. Platkin*,
No. 22-6646 (ZNQ)(TJB), 2023 WL 1380388 (D.N.J. Jan. 31, 2023)...............................16

*Parungao v. Cmty. Health Sys., Inc.*,
858 F.3d 452 (7th Cir. 2017).......................................................................................6

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
761 N.Y.S.2d 192 (N.Y. App. Div. 1st Dep't 2003).........................................................25

*Radich v. Guerrero*,
No. 1:14-CV-00020, 2016 WL 1212437 (D. N. Mar. I. Mar. 28, 2016)..............................21

*Simmons v. Garces*,
763 N.E.2d 720 (Ill. 2012)...........................................................................................24

*Teixeira v. Cnty. of Alameda*,
873 F.3d 670 (9th Cir. 2017).......................................................................................21

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982).....................................................................................................19

*Young v. Bryco Arms*,
821 N.E.2d 1078 (Ill. 2004)...................................................................................24-25

## STATUTES

15 U.S.C. §§ 7901-03.........................................................................2, 6-11, 14-16, 18-19, 22

18 U.S.C. § 921(a)(10).......................................................................................................8

18 U.S.C. § 921(a)(21).......................................................................................................8

18 U.S.C. §§ 921(a)(3).......................................................................................................9

720 ILCS 5/5-2.................................................................................................................11

720 ILCS 5/9-1(a)..............................................................................................................9

720 ILCS 5/9-2(a)..............................................................................................................9

720 ILCS 5/9-3(a)..............................................................................................................9

720 ILCS 5/12-1(a)............................................................................................................9

720 ILCS 5/12-2(c)............................................................................................................9

720 ILCS 5/12-3.05(e)........................................................................................9

720 ILCS 5/18-1(b)(1).......................................................................................9

720 ILCS 5/18-2(a)............................................................................................9

720 ILCS 5/18-3.................................................................................................9

720 ILCS 5/18-4(a)............................................................................................9

720 ILCS 5/24-1(a)............................................................................................9

720 ILCS 5/24-1.2(a).........................................................................................9

720 ILCS 5/24-1.2-5(a)......................................................................................9

720 ILCS 5/24-1.6(a).........................................................................................9

720 ILCS 5/25-3.1(a).........................................................................................9

720 ILCS 5/33A-2(a)-(c)....................................................................................9

815 ILCS 505/2................................................................................................13

815 ILCS 505/2BBBB(b)(1) & (4)........................................2, 5, 11, 13, 17, 19

California Civil Code § 1714(a).........................................................................12

California Civil Code §§ 3479-80.......................................................................12

Indiana Code §§ 7.1–7–1–1 *et seq.*................................................................18

MCC § 1-20-020............................................................................................5, 10

MCC § 2-25-090(a)......................................................................................4-5, 10

N.J. Stat. § 2C:58-35(a).................................................................................15-16

N.Y. Penal Law § 240.45(1)..............................................................................12

Defendant Glock, Inc. manufactures and sells the most popular pistols in America, used by both law enforcement and private citizens. The popularity of Glock pistols is due in part to the simplicity of the design of their operating system, which has remained consistent since they were invented in the 1980s and results in the utmost reliability. Like all semi-automatic pistols, Glock pistols can be illegally converted to fire fully automatic through the installation of a device known as an auto sear. Auto sears are considered to be machineguns for purposes of federal and Illinois law and are illegal for private individuals to manufacture, import, and possess. Although auto sears for Glock pistols have been around almost as long as the pistols themselves, in recent years, an increasing number of criminals in Chicago have been illegally modifying some Glock pistols by installing auto sears to make them fully automatic ("Modified Glock Pistols") and using them to commit crimes.

Just as Chicago looks to blame certain carmakers for the City's inability to stop auto thefts in the City, Chicago seeks to place the blame on Glock, Inc. for crime involving the use of Modified Glock Pistols. Chicago does not claim that Glock pistols fail to function properly when they are sold by Glock, Inc. and, in light of their popularity and reliability, does not seek to restrict their sale to, or use by, law enforcement. Through this lawsuit, however, the City of Chicago seeks to have this Court issue an injunction barring Glock, Inc. from selling Glock pistols to consumers through Illinois gun stores that serve the Chicago market. The City claims that because certain Glock pistols are illegally modified through the installation of an auto sear, that Glock, Inc. has a duty to change the design of the most popular pistol in America to make it more difficult for criminals to illegally modify them. Chicago contends that by simply continuing to sell its pistols with their original, proven design, Glock, Inc. has acted unlawfully and created and contributed to a nuisance in the City.

1

The City's attempt to hold Glock, Inc. liable for the actions of criminal third parties is precisely the kind of action that prompted Congress in 2005 to enact the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–03 ("PLCAA"). With limited exceptions, the PLCAA bars actions that seek to hold firearm manufacturers like Glock, Inc. liable for alleged injuries "resulting from the criminal or unlawful misuse" of a firearm by a third party. *Id.* § 7903(5)(A). One of the exceptions to the PLCAA's grant of immunity is for an action in which the defendant knowingly violated a state or federal statute "applicable to the sale or marketing of the product" where such violation was the proximate cause of the alleged harm. *Id.* § 7903(5)(A)(iii) (the "predicate exception").

While the Complaint alleges that Glock, Inc. violated the Municipal Code of Chicago ("MCC"), the MCC cannot qualify for the predicate exception because it is not a federal or state statute. To the extent that the MCC incorporates purported violations of two provisions of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2BBBB(b)(1) & (4) ("ICFA"), which are not separately asserted as standalone claims, that still does not bring the Complaint within the predicate exception. The PLCAA's intent to limit statutes "applicable to the sale or marketing" of firearms to statutes that, unlike the ICFA, impose specific restrictions and requirements on the sale or marketing of firearms is evidenced by the exemplar statutes listed in the predicate exception and the requirement of "knowing" violations. Moreover, if the ICFA were otherwise considered to come within the predicate exception, its recently added provisions related to firearms are preempted by the PLCAA and unconstitutional because they violate the commerce clause, are unconstitutionally vague, and improperly infringe on the rights guaranteed by the Second Amendment.

The City's causes of action also fail to state a claim under Illinois state law. More than twenty years ago, the City sued Glock, Inc. and other firearm manufacturers arguing that their sale of legal handguns created a public nuisance in the City based on third parties who illegally possessed them and used them to commit crimes. The Illinois Supreme Court unanimously held that the City's complaint failed to state claims under Illinois law based on lack of duty and proximate cause. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004). Consequently, the City's negligence and public nuisance claims fail as a matter of law, and because proximate cause is an element of the alleged violations of the ICFA, which form the basis for the alleged violations of the MCC, those claims must be dismissed, as well. And if there was any question remaining as to whether the alleged violations of the MCC or ICFA could satisfy the predicate exception under the PLCAA, the absence of proximate cause as a matter of law settles that question and is yet another basis for the application of the PLCAA to this action.

Based both upon the PLCAA and the Illinois Supreme Court's ruling the last time the City of Chicago attempted to hold firearm manufacturers liable for the actions of third-party criminals, the Complaint fails to state a claim and must be dismissed.

## **BACKGROUND**

Based on the allegations in the Complaint [Doc. 1], which are taken as true for purposes of this motion only, "Glock pistols are the most popular firearm in America," "make up the majority of all pistols purchased in the United States," and "[t]housands of Chicago residents purchase Glock firearms." Compl. ¶¶ 3, 18, 76. Glock pistols are semi-automatic, but can be illegally modified by installing an auto sear into them to make them fire fully automatic ("Modified Glock Pistols"). *Id.* ¶¶ 1, 23-24, 34, 45. Other brands of semi-automatic pistols can

also be modified to fire fully automatic through the installation of an auto sear, but it is not as easy to do so. *Id.* ¶ 31.

Glock, Inc. does not manufacture auto sears. *Id.* ¶ 5. Most auto sears are illegally imported from China, or illegally printed using 3D printers. Glock pistols have been sold in the United States for decades and their basic operating mechanism has remained the same. *Id.* ¶¶ 32-33. An auto sear for Glock pistols was invented as early as 1987, but Modified Glock Pistols only became an issue in Chicago in recent years. *Id.* ¶¶ 36-43, 57 (noting that Modified Glock Pistols were not an issue for law enforcement four years ago).

Installing an auto sear in a Glock pistol violates "long-standing federal and state prohibitions on possessing fully automatic machineguns." Compl. ¶ 4. Fully automatic machineguns "have been heavily regulated at the federal level since the 1930s," and are also restricted in Illinois. *Id.* ¶ 19-22, 61. Auto sears themselves are considered to be machineguns and are illegal. *Id.* ¶ 25-25. Modified Glock Pistols have been used to commit crimes in Chicago, and the Chicago Police Department recovered more than 1,100 Modified Glock Pistols from the beginning of 2021, through the end of 2023. *Id.* at 2, 50-57. The City claims that this has resulted in a public nuisance in Chicago related to the "illegal possession and use of machineguns by civilians in the City." *Id.* ¶ 105.

The Complaint asserts that Glock, Inc. has a duty to take "action to put an end to the modification of its pistols by civilians," to make changes to the design of Glock pistols to make it more difficult for criminals to illegally modify them to fire fully automatic, and not to sell "firearms to civilian consumers [that are] easy to convert to illegal machine guns." Compl. ¶¶ 7, 12, 47, 58, 114. Based on the above allegations, the Complaint raises five claims against Glock, Inc.: (1) violation of Section 2-25-090(a) of the MCC based on the unreasonable sale and

4

marketing of firearms; (2) violation of MCC § 2-25-090(a) based on unfair practices; (3) for municipal cost recovery pursuant to MCC § 1-20-020; (4) public nuisance; and (5) negligence. *Id.* ¶¶ 69-118. Although not pled as a separate claim, the City also contends that Glock, Inc. violated two provisions of the ICFA, 815 ILCS 505/2BBBB(b)(1) & (4), which provide that it is unlawful for a firearm industry member:

> through the sale, manufacturing, importing, or marketing of a firearm-related product, to . . . [k]nowingly create, maintain, or contribute to a condition in Illinois that endangers the safety or health of the public by conduct either unlawful in itself or unreasonable under all circumstances, including failing to establish or utilize reasonable controls,

or "[o]therwise engage in unfair methods of competition or unfair or deceptive acts or practices declared unlawful under Section 2 of this Act." *Id.* ¶¶ 12, 71-75, 79, 82, 86, 89, 92, 98-99, 106, 115.

Based on the above, the City seeks various forms of relief against Glock, Inc., including compensatory damages, punitive damages, injunctive relief enjoining the marketing and sale of Glock pistols to "Illinois gun stores that serve the Chicago market," injunctive relief requiring it to "implement reasonable controls, safeguards, and procedures to prevent" Glock pistols from "being possessed, used, marketed, or sold unlawfully to non-law-enforcement consumers in Chicago and by Illinois gun stores that serve the Chicago market," abatement, fines, disgorgement of profits, attorneys' fees, costs, and interest. Compl. at 40 ¶¶ i-x.

## ARGUMENT

## I.    LEGAL STANDARD

In order to survive a motion to dismiss, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombley*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege

5

"sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[W]hen it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)). *See also Howe v. Shchekin*, 238 F. Supp. 3d 1046, 1049–50 (N.D. Ill. 2017) ("[W]here a plaintiff plead[s] himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law, the court can dismiss the complaint accordingly.").

## II. THE CITY'S COMPLAINT MUST BE DISMISSED PURSUANT TO THE PROTECTION OF LAWFUL COMMERCE IN ARMS ACT

### A. The Protection of Lawful Commerce in Arms Act Was Passed to Provide Immunity to Firearm Manufacturers From Lawsuits Seeking to Hold Them Liable for the Criminal Misuse of Their Lawful Products

The PLCAA, which was enacted on October 26, 2005, prohibits the institution of a "qualified civil liability action" in any state or federal court. 15 U.S.C. § 7902(a). The PLCAA provides substantive immunity from being sued for a qualified civil liability action, not just a defense from liability and therefore whether its immunity applies must be decided at the earliest available opportunity. *In re Academy, Ltd.*, 625 S.W.3d 19, 35-36 (Tex. 2021) (unanimously granting petition for mandamus and holding that requiring defendant to present a defense on the

merits to a case barred by the PLCAA would defeat the substantive immunity provided by the statute).

One of the stated purposes of the PLCAA is to "prohibit causes of action against manufacturers . . . for the harm solely caused by the criminal or unlawful misuse of firearm[s] . . . by others when the product functioned as designed and intended." *Id.* § 7901(b)(1). Congress made a number of findings regarding the necessity for the PLCAA, including:

- Lawsuits have been commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

- The manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws. Such Federal laws include the Gun Control Act of 1968, the National Firearms Act, and the Arms Export Control Act.

- Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

15 U.S.C. §§ 7901(a)(3)-(5). Based upon its findings and the purposes stated therein, Congress enacted the PLCAA to prohibit qualified civil liability actions, such as this case, from being "brought in any Federal or State court." *Id.* § 7902(a).

### 1. This Case is a Qualified Civil liability Action

As defined by the PLCAA, and subject to six limited exceptions, a "qualified civil liability action" is a:

> civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product or a trade association, for damages, punitive damages, injunctive or declaratory relief, or

> penalties or other relief resulting from the criminal or unlawful misuse of a qualified product by the person or a third party . . . .

15 U.S.C. § 7903(5)(A). Based on the allegations in the Complaint, this case is a civil proceeding brought by a person (the City of Chicago)[1] against a manufacturer (Glock, Inc.) of a qualified product (Glock pistols) for damages and other relief based on the criminal use (the illegal conversion of Glock pistols to machineguns by the installation of auto sears and the use of the Modified Glock Pistols to commit crimes) of the qualified product (the Glock pistols) by third parties (the criminals who illegally modify them into machineguns through the installation of auto sears and use them to commit crimes). *See generally* Compl.

### 2. Glock, Inc. is a Manufacturer

The PLCAA defines a "manufacturer," with respect to a qualified product, as "a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of title 18, United States Code." 15 U.S.C. § 7903(2). Chapter 44 of title 18 of the United States Code, in turn, defines a manufacturer as "any person engaged in the business[2] of manufacturing firearms . . . for purposes of sale or distribution; and the term 'licensed manufacturer' means any such person licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(10). As a federally licensed manufacturer of firearms, Glock, Inc. is a "manufacturer" pursuant to the terms of the PLCAA. Compl. ¶¶ 18, 67, 71-73, 75.

---

[1] The PLCAA broadly defines the term "person" to include "any governmental entity." 15 U.S.C. § 7903(3).

[2] The PLCAA defines the term "engaged in the business" with reference to 18 U.S.C. § 921(a)(21). The term "engaged in the business," relative to a manufacturer of firearms, is defined as "a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured." 18 U.S.C. § 921(a)(21)(A).

### 3.     Glock Pistols are Qualified Products

The PLCAA defines a "qualified product," in relevant part, as "a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18, United States Code) . . . that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4). Pursuant to 18 U.S.C. §§ 921(a)(3)(A) & (B), a firearm is defined as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" or "the frame or receiver of any such weapon. . . ." Pursuant to the allegations in the Complaint, Glock pistols are qualified products pursuant to the terms of the PLCAA. *See generally* Compl.

### 4.     The City is Seeking Damages and Other Relief Resulting from the Criminal Use of Qualified Products by Third Parties

According to the allegations in the Complaint, the City is seeking damages and other relief arising from the criminal use of Glock pistols by third parties who illegally convert semi-automatic Glock pistols into fully automatic Modified Glock Pistols and use them to commit various crimes including murder, carjacking, robbery, and assault and battery. Compl. ¶¶ 2, 9-11, 50-56. Such actions by the third parties in creating the Modified Glock Pistols and using them violate numerous criminal laws.[3]

Accordingly, the alleged damages and other relief sought by the City resulted from the criminal use (both the illegal conversion of semi-automatic Glock pistols to fully automatic

---

[3] The laws that would be violated by the third parties using the Modified Glock pistols, include, but are not limited to: first degree murder, 720 ILCS 5/9-1(a); second degree murder, 720 ILCS 5/9-2(a); involuntary manslaughter, 720 ILCS 5/9-3(a); assault, 720 ILCS 5/12-1(a); aggravated assault, 720 ILCS 5/12-2(c)(1)-(3), (6); aggravated battery, 720 ILCS 5/12-3.05(e); aggravated robbery, 720 ILCS 5/18-1(b)(1); armed robbery, 720 ILCS 5/18-2(a)(2)-(4); vehicular hijacking, 720 ILCS 5/18-3; aggravated vehicular hijacking, 720 ILCS 5/18-4(a)(4)-(6); unlawful use of weapons, 720 ILCS 5/24-1(a)(4), (7)(i), (10), (14); aggravated discharge of a firearm, 720 ILCS 5/24-1.2(a); aggravated discharge of a machinegun, 720 ILCS 5/24-1.2-5(a); aggravated unlawful use of a weapon, 720 ILCS 5/24-1.6(a); unlawful possession of firearms, 720 ILCS 5/25-3.1(a); and armed violence, 720 ILCS 5/33A-2(a)-(c).

machineguns and the use of Modified Glock Pistols to commit crimes) of qualified products (Glock pistols) by third parties (the criminals who illegally convert semi-automatic Glock pistols to fully automatic machineguns and use them to commit various crimes). The claims in the Complaint therefore constitute a qualified civil liability action, from which the PLCAA provides Glock, Inc. with immunity by prohibiting this action from being "brought in any Federal or State court," unless one of the statute's narrow exceptions applies.

**B.  The City's Complaint Does Not Meet the Requirements for the Predicate Exception**

There are six narrow categories of claims that the PLCAA does not bar because they are excluded from the definition of a qualified civil liability action. Based on the allegations in the Complaint, the only potentially relevant exception here is the predicate exception set forth in 15 U.S.C. § 7903(5)(A)(iii).  That provision excludes from the definition of a prohibited qualified civil liability action an "action in which a manufacturer [of firearms] knowingly violated a state or federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought . . . ."  15 U.S.C. § 7903(5)(A)(iii).

By its plain terms, the predicate exception can only be satisfied by the violation of a state or federal statute, not a municipal ordinance or a regulation.  Accordingly, the City's claims for violation of MCC Sections 2-25-090(a) and 1-20-020 cannot be used to satisfy the predicate exception.  Similarly, there are no exceptions to the PLCAA that would allow the City's common law claims for public nuisance and negligence to proceed. 15 U.S.C. § 7903(5)(A); *see also Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009) (the PLCAA preempts public nuisance and general negligence claims); *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 322 (Mo. 2016) (the "PLCAA expressly preempts all general negligence actions seeking damages resulting from the criminal or unlawful use of a firearm"); *Estate of Kim ex rel. Alexander v. Coxe*, 295

P.3d 380, 386 (Alaska 2013) ("reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage").

As the foundation for its MCC claims, the City alleges that Glock, Inc. violated the ICFA, 815 ILCS 505/2BBBB(b)(1) & (4).[4] An alleged violation of the ICFA, however, does not satisfy the predicate exception because it is simply a restatement of the general law of public nuisance, made specifically applicable to the firearms industry in an attempt to negate the immunity provided by the PLCAA, and it is, therefore, inconsistent with the federal or state statutes referenced in the predicate exception.

The PLCAA gives specific examples of the types of statutes applicable to the sale or marketing of firearms that can be used to satisfy the predicate exception:

> (I)  any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

> (II)  any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of title 18[.]

*Id.* § 7903(5)(A)(iii).  Based on the examples provided in the PLCAA, as well as its purpose, federal appellate courts have held that the predicate exception may only be satisfied by the

---

[4] To the extent that the City asserts that Glock, Inc. has "aided and abetted" the criminal modification of its pistols, Compl. ¶¶ 61-68, it fails to allege that Glock, Inc. either "cause[d] another to perform the conduct" or had the "intent to promote or facilitate" any specific criminal act.  *See* 720 ILCS 5/5-2.  Without intent or knowledge of a specific act and the intent to promote that act, the City's aiding and abetting allegations could be expanded to the mere fact that any firearm manufacturer sells its products "knowing" that a criminal could acquire and misuse the product.  That has never been the law.

violation of statutes that specifically regulate the firearms industry, not to any statutes that are simply applicable to the firearms industry.

In *Ileto*, the Ninth Circuit Court of Appeals held that alleged violations of California Civil Code Sections 1714(a) and 3479-80 could not be used to satisfy the predicate exception to the PLCAA. 565 F.3d 1126, 1132-38. California had codified its common law regarding negligence and public nuisance. *Id.* at 1132-33. Section 1714(a), regarding negligence, states that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." Section 3479, regarding nuisance, stated that "[a]nything which is injurious to health . . ., or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . is a nuisance." The court of appeals held that only "statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happened to have been codified by a given jurisdiction" can be used to satisfy the predicate exception. *Ileto*, 565 F.3d at 1136.

Similarly, in *City of New York v. Beretta U.S.A. Corp.*, the Court of Appeals for the Second Circuit held that an alleged violation of a nuisance statute, N.Y. Penal Law § 240.45(1), could not satisfy the predicate exception to the PLCAA. 524 F.3d 384 (2d Cir. 2008). New York's nuisance statute states that a "person is guilty of criminal nuisance in the second degree when . . . [b]y conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons." N.Y. Penal Law § 240.45(1). The court held that Section 240.45(1) is a "statute of general applicability that does not encompass the conduct of firearms

manufacturers," and therefore could not be used to satisfy the predicate exception. *City of New York*, 524 F.3d at 400. The court explained that the predicate exception can be satisfied only by the violation of a statute that: (1) "expressly regulate firearms"; (2) "courts have applied to the sale and marketing of firearms"; or (3) "clearly can be said to implicate the purchase and sale of firearms." *Id.* at 404.

The provision in Section 2BBBB(b)(1) of the ICFA forming the basis for the City's allegations against Glock, Inc. is a simple prohibition on the creation of or contribution to a public nuisance:

> It is an unlawful practice within the meaning of this Act for any firearm industry member, through the sale, manufacturing, importing, or marketing of a firearm-related product, to do any of the following: (1) Knowingly create, maintain, or contribute to a condition in Illinois that endangers the safety or health of the public by conduct either unlawful in itself or unreasonable under all circumstances, including failing to establish or utilize reasonable controls.

The provision in Section 2BBBB(b)(4) of the ICFA that Glock, Inc. allegedly violated is simply a prohibition against engaging in "unfair methods of competition or unfair or deceptive acts or practices declared unlawful under Section 2 of this Act," which are themselves generally applicable standards of conduct.[5]

While these provisions in the ICFA are directed at the firearm industry, they do not specifically regulate the sale or marketing of firearms in the manner required to satisfy the predicate exception, but instead seek to incorporate firearms into general common law principles.

---

[5] "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

Unlike the statutes listed as examples in the PLCAA, which regulate the firearms industry through clear commands as to what is required or prohibited in conducting commerce in firearms, and are therefore capable of being "knowingly" violated, the ICFA allows a firearms industry member to be held liable for conduct that is determined by a court after the fact to be "unreasonable under all circumstances." This is an amorphous standard to which conduct cannot be definitively conformed to avoid potential liability. It is no different than the nuisance statutes that the U.S. Courts of Appeals for the Second and Ninth Circuits both found not to satisfy the predicate exception. Significantly, there is nothing in the text of the ICFA that prohibits the otherwise lawful manufacture and sale of semi-automatic pistols, even if they can be illegally modified after the sale to fully automatic machineguns through the installation of an auto sear. Instead, the City's claim would require that this Court declare that doing so is "unreasonable" and creates, maintains, and contributes to a public nuisance.

Indeed, forcing the ICFA into the predicate exception would directly conflict with the purpose of Congress in enacting the PLCAA. Congress enacted the PLCAA based in part on its findings that lawsuits were being commenced against manufacturers of "firearms that operate as designed and intended, which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals," and that the manufacturers "should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended." 15 U.S.C. §§ 7901(a)(3) & (5). Congress further found that such lawsuits are "based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law," and that they are an:

> attempt to use the judicial branch to circumvent the Legislative branch of
> government to regulate interstate and foreign commerce through judgments

and judicial decrees thereby threatening the Separation of Powers doctrine and weakening and undermining important principles of federalism, State sovereignty and comity between the sister States.

*Id.* §§ 7901(a)(7)-(8).

The ICFA seeks to authorize exactly what the PLCAA prohibits – civil actions against firearms manufacturers seeking to recover damages and other relief resulting from the criminal or unlawful misuse of firearms by third parties. In doing so, it takes the same approach as a similar law enacted in New Jersey, which states that:

> (1) A gun industry member shall not, by conduct either unlawful in itself or unreasonable under all the circumstances, knowingly or recklessly create, maintain, or contribute to a public nuisance in this State through the sale, manufacturing, distribution, importing, or marketing of a gun-related product.
>
> (2) A gun industry member shall establish, implement, and enforce reasonable controls regarding its manufacture, sale, distribution, importing, and marketing of gun-related products.
>
> (3) It shall be a public nuisance to engage in conduct that violates paragraphs (1) or (2) of this subsection.

N.J. Stat. § 2C:58-35(a). Like the ICFA, Section 2C:58-35(a) allows a firearms manufacturer to be held liable for conduct that a court concludes to be "unreasonable under all the circumstances," even though it is not "unlawful in itself," *i.e.*, it does not violate another statute. The National Shooting Sports Foundation ("NSSF"), a firearm industry trade association, sued to challenge the constitutionality of Section 2C:58-35 based, in part, on the PLCAA. Although the Third Circuit later concluded that the NSSF lacked standing, the U.S. District Court for the District of New Jersey addressed the merits of its claim and explained that the:

> predicate exception exempts only those civil actions that require proof that the actor knowingly violated the relevant statute. 15 U.S.C. § 7903(5)(A)(iii). The knowingly requirement of the predicate exception necessitates the actor to have a sufficiently concrete duty to have knowingly violated a relevant statute. It is contrary to the PLCAA to hold an industry member liable who complies with all laws but did not know that it failed to employ "reasonable procedures,

15

safeguards, and business practices," or has conducted its lawful business in a manner so "unreasonable under all the circumstances" that it can be said to have "contribute[d] to" "a condition which ... contributes to the injury or endangerment of the health, safety, peace, comfort, or convenience of others." N.J.S.A. 2C:58-35(a)(1), (a)(2).

*NSSF v. Platkin*, No. 22-6646 (ZNQ)(TJB), 2023 WL 1380388, at *6 (D.N.J. Jan. 31, 2023), *vacated on other grounds sub nom. NSSF v. Attorney General of New Jersey*, 80 F.4th 215 (3d Cir. 2023). The district court further noted that to read Section 2C:58-35 as satisfying the predicate exception would directly conflict with Congress's purpose in enacting the PLCAA. *Id.* at *7.

The same reasoning applies to the identified provisions of the ICFA and demonstrates why they cannot satisfy the predicate exception. It would directly conflict with federal law prohibiting firearms manufacturers from being sued for damages and other relief resulting from the criminal use of firearms by third parties and would instead allow those manufacturers to be held liable even though they complied with all statutes specifically regulating the sale and marketing of their products. Directly contrary to the intent of Congress as expressed in the PLCAA, firearm manufacturers could be held liable based merely on a finding that they acted "unreasonably" under all circumstances.

Even if the ICFA could be considered a statute capable of satisfying the predicate exception to the PLCAA, it could not serve that purpose based on the City's allegations against Glock, Inc. in this case. In order to satisfy the predicate exception to the PLCAA, the knowing violation of the state or federal statute applicable to the sale or marketing of firearms must be a "proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). As explained in detail in section III of the Argument below, the Illinois Supreme Court unanimously

held twenty years ago that the same type of conduct raised in the City's Complaint cannot be the proximate cause of injuries to the City as a matter of law. *See City of Chicago*, 821 N.E.2d 1099.

### C. If the ICFA Qualifies Under the Predicate Exception, it is Unconstitutional

To the extent the ICFA is found to satisfy the PLCAA's predicate exception, it is unconstitutional as applied to Glock, Inc. in this case for three reasons.[6] First, it regulates legal out-of-state conduct in violation of the commerce clause. Second, it violates the due process clause because the references to conduct "unreasonable under all circumstances" and "reasonable controls" are vague. Third, it violates the Second Amendment because the City seeks to use it as the basis to prohibit the sale of the most popular firearm in America to residents of Chicago and surrounding communities, and there is no historical precedent for the type of regulation of firearms manufacturers that it seeks to impose.

### 1. The ICFA Violates the Commerce Clause

The Constitution restricts the power of the states to directly regulate out-of-state conduct. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023). The ICFA violates the commerce clause because it seeks to impose liability on Glock, Inc. for conduct that took place entirely outside of Illinois and was legal pursuant to federal law and the law of the state in which the conduct occurred. The ICFA seeks to regulate Glock, Inc.'s "sale, manufacturing, importing, or marketing" of Glock pistols in Georgia, simply because such pistols may eventually be sold or possessed in Illinois. 815 ILCS 505/2BBBB(a) & (b); Compl. ¶ 18. Based on the City's arguments, an Illinois court could hold Glock, Inc. liable for failing to change the design of its

---

[6] A facial challenge to the constitutionality of the ICFA is pending before the U.S. District Court for the Southern District of Illinois in the case of *NSSF v. Raoul*, Case No. 3:23-cv-02791-SMY. Briefing on the constitutionality of the ICFA in connection with plaintiff's motion for a preliminary injunction and defendant's motion to dismiss was completed on December 11, 2023 and is awaiting a decision from the court.

pistols manufactured and sold in Georgia, simply because they could ultimately be sold or possessed in Illinois, even if Glock, Inc. did not sell any of them in Illinois and the design of its pistols complied with all relevant federal and Georgia laws.

The commerce clause does not allow Illinois to engage in such extraterritorial regulation of the design and manufacture of products simply because such products may eventually be sold or possessed in Illinois. The ICFA seeks to regulate out-of-state commerce in a manner similar to an Indiana law that the Seventh Circuit Court of Appeals held to be unconstitutional in *Legato Vapors, LLC v. Cook*, 847 F.3d 825 (7th Cir. 2017). Indiana Code §§ 7.1–7–1–1 *et seq.* sought to directly regulate manufacturing operations for e-cigarettes in other states, including imposing requirements on how they "must build and secure their facilities, operate assembly lines, clean their equipment, and contract with security providers, if any of their products are sold in Indiana." *Id.* at 827, 830. Based on the statute's attempt to directly regulate manufacturing in another state, the Seventh Circuit held that it was unconstitutional as a violation of the commerce clause. *Id.* at 830; *see also, e.g.*, *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 612-16 (9th Cir. 2018) (enjoining a California law that sought to "dictate the method by which" companies treated medical waste in other states). Based on the City's reading of the ICFA, it gives Illinois courts the power to order Glock, Inc. to change the design of the pistols that it manufactures in Georgia, simply because those pistols could eventually be sold or possessed in Illinois and criminally modified to fire fully automatic through the installation of an auto sear. The commerce clause also prohibits the states from "discriminating against or imposing excessive burdens on interstate commerce." *Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 549 (2015). The ICFA authorizes lawsuits that impose such a burden on interstate commerce, which was, in part, the motivation for Congress to enact the PLCAA. 15 U.S.C. § 7901(b)(4); *see also*

*id.* § 7901(a)(6) (finding that the potential liability from such lawsuits "constitutes an unreasonable burden on interstate and foreign commerce of the United States"). The only way for Glock, Inc. to avoid potential liability pursuant to the ICFA would be to cease the manufacture and sale of any and all "firearm-related products." Indeed, if the ICFA was not prohibited by the commerce clause, other states could pass similar laws requiring Glock, Inc. to change the design of its pistols in still other ways to satisfy the conflicting desires of those states. Or other states could mandate that Glock, Inc. maintain the original design of its pistols, making compliance with all such laws impossible. The commerce clause operates to preclude individual states from imposing those burdens on interstate commerce.

## 2. The ICFA is Void for Vagueness

The ICFA prohibits all firearm industry members, including Glock, Inc., from creating, maintaining, or contributing to a public nuisance "by <u>conduct</u> either unlawful in itself, or <u>unreasonable under all circumstances</u>, including failing to establish <u>reasonable controls</u>. Reasonable controls include <u>reasonable procedures, safeguards, and business practices</u> . . . ." 815 ILCS 505/2BBBB(b)(1) (emphasis added). A statute that prohibits or requires certain conduct "in terms so vague that men of common intelligence must necessarily guess at its meaning . . . violates the first essential of due process." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). So do statutes with terms that are so vague that they authorize "arbitrary [or] discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A more "stringent" vagueness test applies for statutes that "threaten[] to inhibit the exercise of constitutionally protected rights," or that provide for "quasi-criminal" penalties. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).

19

The ICFA is subject to a more stringent vagueness requirement because it implicates the Second Amendment right to keep and bear arms, and provides for fines, which are quasi-criminal penalties. Yet the ICFA provides no guidance on which Glock, Inc. could rely to ensure that its conduct would be deemed reasonable under all circumstances and that its procedures, safeguards, and business practices incorporate "reasonable controls." The Complaint notes that "Glock pistols are particularly easy to modify," but acknowledges that other pistols can also have auto sears added onto them. Compl. ¶ 30. Thus, according to the City, whether a pistol manufacturer violates the ICFA is a matter of degree of difficulty for the criminal in making the illegal modification. If the design of Glock pistols was changed, how much change would be enough? Would the City have to be in the design room to validate whether the changes to the Glock pistols had gone far enough? The vagueness of the "standard" the City seeks to apply is readily apparent.

Indeed, based on the language of the ICFA, Glock, Inc's conduct could comply with all applicable laws and regulations, *i.e.*, not be "unlawful in itself," but still be subject to liability based on an after-the-fact "reasonableness" determination, including a finding that its procedures, safeguards, and business practices do not constitute "reasonable controls." In this regard, the ICFA is so "standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). There is nothing, short of entirely withdrawing from the firearm industry, that Glock, Inc. could do to ensure that it could not be held liable pursuant to the ICFA because meeting an undefined and moving standard of "reasonableness" gives it no real guidance. For that reason, these provisions of the ICFA are unconstitutional because they are impermissibly vague.

### 3.    The ICFA Violates the Second Amendment

The ICFA provisions related to firearms also violate the Second Amendment.  As the City concedes, Glock pistols are the "most popular firearm in America," "make up the majority of all pistols purchased in the United States," and "[t]housands of Chicago residents purchase Glock firearms." Compl. ¶¶ 3, 18, 76.  Yet the City seeks an injunction barring the sale of Glock pistols not only to civilians in Chicago, but also to all "Illinois gun stores that serve the Chicago market."  Compl. at 40 ¶ i.  The Supreme Court has held that the Second Amendment protects an individual right to keep and bear firearms that are in common use for lawful purposes, a category which unquestionably includes Glock pistols.  *District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008).  The "core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc).  *See also Radich v. Guerrero*, No. 1:14-CV-00020, 2016 WL 1212437, at *7 (D. N. Mar. I. Mar. 28, 2016) ("If the Second Amendment individual right to keep and bear a handgun for self-defense is to have any meaning, it must protect an eligible individual's right to purchase a handgun, as well as the complimentary right to sell handguns.").

To survive a Second Amendment challenge, the City would have to demonstrate that there is a historical tradition of banning legal firearms simply because they could later be illegally modified by third parties into prohibited firearms. *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023) (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022)); *see id.* (that is the "only one way" "the government" can "defend [a] regulation" "when the Second Amendment's 'plain text' covers the regulated conduct").  There is no historical tradition for such a ban and, as the City concedes, other semi-automatic pistols can also be illegally modified into fully automatic machineguns by the installation of an auto sear.  Compl. ¶

21

31. Similarly, legal rifles and shotguns could be illegally modified into prohibited short-barreled rifles and shotguns, simply by sawing off a section of their barrel so that it is less than the required length.

The ICFA also imposes restrictions that would undermine the Second Amendment by essentially imposing potential unlimited liability on members of the firearms industry. As explained above, the ICFA uses vague terms related to "unreasonable conduct" and "reasonable controls," that prevent Glock, Inc. and other firearm manufacturers from being able to structure their conduct to ensure that it complies with the law to avoid liability. There is no historical tradition of firearm regulations that could potentially support such a law. The City cannot rely on general public nuisance laws, because they were never used to impose such regulations at the time of the adoption of the Second Amendment. Further, through the PLCAA, Congress specifically found that an attempt to use them to impose liability on the firearms industry is "based on theories without foundation in hundreds of years of the … jurisprudence of the United States." 15 U.S.C. §7901(a)(7). *See also Camden County Board of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540-41 (3rd Cir. 2001) (noting that expanding "public nuisance law to embrace the manufacture of handguns would be unprecedented").

## III. THE CITY'S CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO ILLINOIS LAW

While the federal statutory immunity provided by the PLCAA means that Glock, Inc. should not be required to defend the City's claims at all, it is nonetheless clear under Illinois law that those claims must be dismissed.

As far back as 1998, the City of Chicago attempted to impose liability on Glock, Inc. and other members of the firearms industry for the alleged creation of a public nuisance resulting from their alleged lack of control over the sale and distribution of their products, which allegedly

permitted those firearms to be readily obtained and used by criminals in Chicago, and for design features that are allegedly attractive to criminals. *See City of Chicago*, 821 N.E.2d at 1108 (describing the nature of the allegations against the manufacturer defendants). Specifically, the City alleged that the manufacturers "fail to supervise, regulate or set standards for dealers' conduct, instead relying on the mere fact that the dealers are licensed by the federal government." *Id.* (quoting Chicago's Second Amended Complaint). In addition, the City alleged that the manufacturers, including Glock, Inc., "design and market their products to appeal to those who intend to use them for criminal purposes," including features that "make certain firearms particularly attractive to criminals." *Id.*

In response to the City's claims that those manufacturers had not instituted reasonable controls or design choices, the Illinois Supreme Court unanimously held that there is no "public right to be free from the threat that members of the public may commit crimes against individuals," separate and apart from the "individual right to be free from the threat of illegal conduct by others." *City of Chicago*, 821 N.E.2d at 1114-16. The court recognized that "[w]hether a duty of care exists is a question of law to be determined by the court," and held as a matter of law that Glock, Inc. and the other firearm manufacturers "owe no duty to the city of Chicago or its residents to prevent their firearms from ending up in the hands of persons who use and possess them illegally." *Id.* at 1125-26 (internal quotations and citations omitted); *see also Linton v. Smith & Wesson*, 469 N.E.2d 339, 340 (Ill. App. 1984) (holding that a firearm manufacturer did not owe a duty to use "reasonable means to prevent the sale its handguns to persons who are likely to cause harm to the public."). The Illinois Supreme Court's conclusion that Glock, Inc. did not have a duty to prevent criminals from acquiring and using its products must necessarily extend to the City's current claim that Glock, Inc. must prevent criminals from

acquiring and modifying its pistols to add auto sears to them and then using them in crimes in Chicago.

In addition to the Supreme Court's finding of no duty, it also concluded in the prior case that the legal sale of firearms could not, as a matter of law, be the proximate cause of the City's alleged harms. *City of Chicago*, 821 N.E.2d at 1136. Proximate cause may be decided as a matter of law, as it was in *City of Chicago*, where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause. *Harrison v. Hardin County Comm. Unit School Dist. No. 1*, 758 N.E.2d 848, 854-55 (Ill. 2001) (Harrison, C.J. specially concurring); *City of Chicago*, 821 N.E.2d at 1127-28. Legal cause is established only if the defendant's conduct is "so closely tied to plaintiff's injury that he should be held legally responsible for it." *Simmons v. Garces*, 763 N.E.2d 720, 732 (Ill. 2012) (citation omitted). "The question is one of policy—how far should a defendant's legal responsibility extend for conduct that did, in fact, cause the harm?" *City of Chicago*, 821 N.E.2d at 1127.

In *Young v. Bryco Arms*, 821 N.E.2d 1078, 1082 (Ill. 2004), plaintiffs alleged that firearms manufacturers and dealers created a public nuisance by designing, marketing, and selling firearms that appeal to criminals. The Illinois Supreme Court explained that in "cases in which injury is caused by the intervening acts of third parties," a "condition-versus-cause analysis applies." 821 N.E.2d at 1087. Pursuant to this analysis, if the "defendant's conduct merely furnishes a condition by which injury is made possible, and a third person, acting independently, subsequently causes injury, the defendant's creation of the condition is not a proximate cause of the injury." *Id.* (citing *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1071 (1999)). Based on the above, the court held that it is:

> unreasonable to expect defendants to foresee that the aggregate effect of the lawful manufacture and sale of firearms will be the creation of a public

24

> nuisance in a distant city. Therefore, defendants' business practices merely create a condition that makes the eventual harm possible. As such, defendants' conduct cannot constitute a legal cause of the alleged nuisance.

*Young*, 821 N.E.2d at 1091.

The Illinois Supreme Court reached the same decision in the *City of Chicago* case, holding that the "alleged public nuisance is not so foreseeable to the dealer defendants that their conduct can be deemed a legal cause of a nuisance that is the result of the aggregate of the criminal acts of many individuals over whom they have no control." 821 N.E.2d at 1138. *See also id.* at 1136 (holding that firearm industry members' "'lawful commercial activity, having been followed by harm to person and property caused directly and principally by the criminal activity of intervening third parties, may not be considered a proximate cause of such harm'") (quoting *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 201 (N.Y. App. Div. 1st Dep't 2003)); *Martin v. Harrington & Richardson, Inc.,* 743 F.2d 1200, 1205 (7th Cir.1984) (correctly predicting that Illinois would hold that the criminal misuse of firearms is "not a foreseeable consequence of gun manufacturing").

The lack of proximate cause as a matter of law requires the dismissal not only of the City's negligence and public nuisance claims, but also its claims for violations of the MCC. Those MCC claims are predicated on the ICFA, which itself requires a showing of proximate cause. *See Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015) (holding that to prevail on an ICFA claim, plaintiff must prove that the deception proximately caused its injury) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996)); *Mighty v. Safeguard Properties Mgmt., LLC*, No. 16 C 10815, 2018 WL 5619451, at *9 (N.D. Ill. Oct. 30, 2018) (claim under the ICFA requires showing that "the deception proximately caused the plaintiff's injury"). Because the allegations underlying each claim in the City's Complaint are premised

entirely on harm unquestionably resulting from the criminal activity of third parties, proximate cause is precluded as a matter of law under the prior decisions of the Illinois Supreme Court, and the Complaint must be dismissed on that basis.

## CONCLUSION

For the above reasons, Glock, Inc. respectfully requests that this Court grant its motion, dismiss the City's Complaint and all claims against it with prejudice, declare the ICFA to be unconstitutional on the basis that it violates the commerce clause, is void for vagueness in violation of the due process clause, and violates the Second Amendment, and grant such other relief as it deems just and proper.

Dated: June 10, 2024

Respectfully submitted,

By:     */s/ Christopher Renzulli*
        John F. Renzulli
        Christopher Renzulli
        Scott C. Allan
        **RENZULLI LAW FIRM, LLP**
        One North Broadway, Suite 1005
        White Plains, New York 10601
        Telephone: (914) 285-0700
        Email: jrenzulli@renzullilaw.com
                crenzulli@renzullilaw.com
                sallan@renzullilaw.com

        – and –

        Holly A. Harrison
        Michael L. Rice
        **HARRISON LAW LLC**
        141 West Jackson Blvd., Suite 2055
        Chicago, IL 60604
        Telephone: 312-638-8781
        Email: hollyharrison@hlawllc.com
                mikerice@hlawllc.com

        Attorneys for Glock, Inc.

26